INHABITANTS OF MALDEN *vs.* INHABITANTS OF MELROSE.

Middlesex.   Jan. 8. — Aug. 30, 1878.   AMES & LORD, JJ., absent.

After the Prov. St. of 1767 (7 G. III.), c. 3, § 4, and before the St. of 1789, c. 14, no person could gain a settlement by residence in a town for any length of time, although not warned away, without obtaining the approbation of the town at a general meeting.

In an action by one town against another, for the support of a pauper, it appeared that, by the St. of 1850, c. 309, the defendant town was set off from the plaintiff town ; that the grandfather of the pauper in 1785 bought an estate of the clear annual income of three pounds in that part of the town which became the defendant town by the division, and resided there until his death in 1831 ; that his son, the father of the pauper, came to the plaintiff town with his father, and in 1815 moved with his family on to a place which is now in the plaintiff town, and in 1823, bought and moved on to a freehold estate in that part of the town which remained within the limits of the plaintiff town on its division, and resided there continuously with his family, including the pauper, until 1832, when he and his family moved to another town ; and that the pauper was absent from the plaintiff town when it was divided, and his last dwelling place in the town was in that part of it which remained the plaintiff town after its division. *Held*, that by the St. of 1789, c. 14, the grandfather acquired a settlement by his two years' ownership and residence ; that this settlement was derived by the pauper ; that the effect of such settlement was not changed by the fact of the removal of the father of the pauper to another part of the old town or to another town, and of his absence when the town was divided ; and that, by the St. of 1850, c. 309, § 3, which provides that the two towns " shall be respectively liable for the support of all persons who now do, or hereafter shall, stand in need of relief as paupers, whose settlement was gained by, or derived from, a settlement gained or derived within their respective limits," the pauper was chargeable to the defendant town.

CONTRACT upon an account annexed for the support of Ezra Waitt and George W. Waitt, two paupers.   Answer, a general denial.   Trial in the Superior Court, before *Pitman*, J., who reported the case for the consideration of this court, in substance as follows :

The plaintiff offered to show that Ezra Waitt, the grandfather of the paupers, came to Malden from Lynn in 1783, and moved

on to the "Pratt Place," so called, in what is now Malden, which he bought on February 4, 1783; that on February 23, 1784, a warrant was issued by order of the selectmen of Malden, and served on Ezra Waitt, to warn him and his family to depart from the town; that on February 28, 1785, he sold the "Pratt Place," and on March 22, 1785, bought the "Ireson Place," so called, in that part of Malden which became Melrose by the St. of 1850, *c.* 309, and resided there until his death in 1831; that the clear annual income of each of these places was ten pounds during the period it was occupied by him; that his son, Ezra Waitt, the father of the paupers, was born in Lynn on February 8, 1781, came to Malden with his father, and in September, 1815, moved with his family on to a place which is now in Malden, and on January 25, 1823, bought and settled on a freehold estate in that portion of the town which remained within the limits of Malden on its division by the St. of 1850, and resided there continuously with his family, including the paupers, until 1832, when he and his family moved to Boston; that Ezra Waitt, one of the paupers, was born on March 28, 1810, and George W. Waitt, the other, was born on January 24, 1813; that they were absent from Malden when the town was divided; and that their last dwelling place in the town was in that part of it which remained Malden after the division.

Upon this evidence, the judge ruled that the plaintiff could not recover; and directed a verdict for the defendant. If the ruling was right, judgment was to be entered on the verdict; otherwise, the verdict was to be set aside.

*J. W. Pettengill*, for the plaintiff.

*F. S. Hesseltine*, for the defendant.

COLT, J. The settlement of the paupers, for whose support this action is brought, is in Melrose. It is derived from their grandfather, who first gained a settlement in that part of the old town of Malden which, upon the incorporation of Melrose, in 1850, was set off to that town. The grandfather came to Malden on February 4, 1783, and bought the "Pratt Place" in what is now Malden, where he continued to live for more than two years. But he gained no settlement thereby, because after the Prov. St. of 1767 (7 G. III.) *c.* 3, § 4, and before the St. of 1789, *c.* 14, no person could gain a settlement by residence for

any length of time, although not warned away, unless he obtained the approbation of the town at a general meeting. Between the years named there was no mode of acquiring a new settlement but by such approbation. *Granby* v. *Amherst*, 7 Mass. 1. *Salem* v. *Andover*, 3 Mass. 436. *West Springfield* v. *Granville*, 4 Mass. 486. Leavitt's Summary, 22. After leaving the "Pratt Place" he bought the "Ireson Place," in that part of Malden which became Melrose, and resided there until his death in 1831. The clear annual income of this estate was more than three pounds during the time of his occupancy; and, under the provisions of the St. of 1789, *c.* 14, the grandfather acquired a settlement by his ownership of and residence upon it for two whole years.

The effect of the settlement thus gained by the grandfather is not changed by the fact that the father of these paupers in 1815 removed with his family to that part of the old town which is now Malden and bought a freehold estate there, upon which he resided until 1832; and that he and his family removed to Boston, and were absent when Malden was divided, not having gained a settlement elsewhere. A settlement once acquired is not affected by a removal to another part of the same town. *Dalton* v. *Hinsdale*, 6 Mass. 501. *Princeton* v. *West Boylston*, 15 Mass. 257.

Section 3 of the St. of 1850, *c.* 309, by which the town of Melrose was incorporated, provides that the "towns of Malden and Melrose shall be respectively liable for the support of all persons who now do, or hereafter shall, stand in need of relief as paupers, whose settlement was gained by, or derived from, a settlement gained or derived within their respective limits." This special act must control the provisions of the Gen. Sts. *c.* 69, § 1, *cl.* 10, which declare that "upon the division of a city or town, every person having a legal settlement therein, but being absent at the time of such division, and not having acquired a legal settlement elsewhere, shall have his legal settlement in that place wherein his last dwelling place or home happens to fall upon such division." This provision was a reënactment of the Rev. Sts. *c.* 45, § 1, *cl.* 10, which was in force when the special act was passed, and the general law in its application to these towns is changed by that act. The act pro-

vides not simply a rule for determining how the future pauper expenses of the two towns shall be apportioned, as in *Westborough* v. *Rehoboth*, 4 Cush. 185 ; nor is it confined in its application, as in *Hanson* v. *Pembroke*, 16 Pick. 197, to a class of persons which would not include these paupers. See also *North Andover* v. *Groveland*, 1 Allen, 75. It embraces all persons who shall stand in need of relief, and extends to settlements within the respective limits of the two towns, both derivative and acquired. It would be a forced construction to hold that it was not the intention to change the general laws relating to pauper settlements in reference to these towns.

The result is, that these paupers, deriving their settlement through father and grandfather from the " Ireson Place" in Melrose, are chargeable to that town. *Verdict set aside.*