ASSESSORS OF BROOKLINE *vs.* PRUDENTIAL INSURANCE
COMPANY OF AMERICA.

Suffolk.   October 6, 1939. — November 25, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Tax*, On real estate: abatement.  *Commissioner of Corporations and
Taxation.  Words*, "Sufficient description."

The requirement of § 59 of G. L. (Ter. Ed.) c. 59, as amended by St.
1933, c. 266, § 1, respecting the form of an application for abatement
of a tax on real estate, interpreted with reference to § 61 as amended
by St. 1933, c. 165, § 2, is that the application shall be in writing on a
form approved by the tax commissioner and shall include a sufficient
description of the particular real estate as to which an abatement is
requested.

The tax commissioner is without power or authority, under the guise of
approving a form which an applicant for abatement of a tax on real
estate must use under § 59 of G. L. (Ter. Ed.) c. 59, as amended by
St. 1933, c. 266, § 1, to impose upon the applicant an obligation to
furnish information not required by the statutes either expressly or
by implication.

Under G. L. (Ter. Ed.) c. 59, § 59, as amended by St. 1933, c. 266, § 1;
§ 61, as amended by St. 1933, c. 165, § 2, the information to be given
on an approved form of application for abatement of a tax on real
estate is such as will adequately apprise the assessors that a claim for
abatement is being made, by a person entitled to make it, upon par-
ticular real estate sufficiently described therein; the application is in
the nature of a pleading rather than of presentation of evidence.

An application under G. L. (Ter. Ed.) c. 59, § 59, as amended by St.
1933, c. 266, § 1, for abatement of a tax on real estate need not include
information or a statement of evidence as to the value of the property.

In determining whether error of law vitiated a finding by the Appellate
Tax Board, (contrary to a contention by assessors,) that an application
for an abatement of a tax on real estate was "a substantial compli-
ance with the" requirements of § 59 of G. L. (Ter. Ed.) c. 59, as
amended by St. 1933, c. 266, § 1; § 61, as amended by St. 1933,
c. 165, § 2, that it should be "in writing . . . on a form approved
by the commissioner" and should include "a sufficient description"
of such real estate, the fact that the assessors had accepted the appli-
cation and had granted a partial abatement thereon was entitled to
and was given consideration.

Statements, made by an applicant for abatement of a tax on real estate on
a form approved by the tax commissioner, describing the property as
a three-story apartment house containing six apartments located at a
given number on a designated street, could be found to have furnished

a "sufficient description" within § 61 of G. L. (Ter. Ed.) c. 59, as amended by St. 1933, c. 165, § 2; and a finding by the Appellate Tax Board that the application was sufficient under § 59 of c. 59 as amended by St. 1933, c. 266, § 1, was not vitiated by the applicant's failure to answer certain other questions as to the description of the property, and questions as to its value, and questions dealing with other types of property.

APPEAL from a decision by the Appellate Tax Board.

R. I. Hunneman, for the Assessors of Brookline.

J. I. Berns, for the taxpayer.

FIELD, C.J.   Eleven parcels of real estate in the town of Brookline were assessed to the Prudential Insurance Company of America, herein referred to as the taxpayer, as of January 1, 1936.   The taxpayer applied to the assessors for an abatement of the tax assessed upon each of those parcels, and a partial abatement of the tax on each parcel was granted by the assessors.   The taxpayer, claiming further abatements, appealed to the Board of Tax Appeals — now the Appellate Tax Board, to which the jurisdiction of the former board was transferred by statute. G. L. (Ter. Ed.) c. 59, § 65, as amended. G. L. (Ter. Ed.) c. 58A, as amended.   St. 1937, c. 400.   See § 4.

The assessors moved to dismiss the taxpayer's appeals "on the ground that the Appellate Tax Board has no jurisdiction, since the appellant's purported applications for abatement, copies of which are hereto annexed, are not applications 'in writing to the assessors, on a form approved by the commissioner, for an abatement' of the taxes assessed as required by G. L. (Ter. Ed.) c. 59, § 59." See said section as appearing in St. 1933, c. 266, § 1, and amended by St. 1935, c. 187, § 1.   See now St. 1939, c. 250, § 1.   The Appellate Tax Board found the facts relating to this motion, denied the motion, and granted further abatements. The assessors appealed from the decision of the Appellate Tax Board.   G. L. (Ter. Ed.) c. 58A, § 13, as amended.

The only question presented by the appeal is whether the assessors' motion to dismiss the appeals of the taxpayer from the decision of the assessors was denied rightly.

1. General Laws (Ter. Ed.) c. 59, § 59, as amended (see St. 1935, c. 187, § 1), provided, at the time the taxpayer

applied for abatement, that a "person aggrieved by the tax assessed upon him may, on or before October first of the year to which the tax relates, apply in writing to the assessors, on a form approved by the commissioner [that is, the tax commissioner], for an abatement thereof," with provisions regarding the actions of the assessors upon such an application. The Appellate Tax Board found with respect to the applications for abatements by the taxpayer — and its findings of fact are final unless vitiated by error of law (G. L. [Ter. Ed.] c. 58A, § 13, as amended) — that the "form of application approved by the commissioner was used and the following information was given: name of applicant; post office address; name of person assessed; location of property; total assessed valuation; applicant's estimate of the fair cash value; a statement that the present owner had an interest in or lien upon the property previous to acquiring title; class of building; number of stories; number of apartments; a statement that the property is rented; the amount of total rentals if fully rented; and a statement of the gross rental for the twelve months preceding the assessment date. No other questions on the application forms were answered." Copies of the applications for abatement made to the assessors by the taxpayer are contained in the record as required by G. L. (Ter. Ed.) c. 58A, § 13, as amended. The questions on the application forms, as disclosed by these copies of the applications, that were not answered are set out in a footnote.[1]   The part of

---

[1] 1. Age of building, date of construction, block and lot.   2. The assessed value of the land.   3. The assessed value of the buildings.   4. The year in which the property was acquired.   5. The full consideration.   6. From whom the property was acquired.   7. Whether by private sale or auction.   8. Cost as specified in building permit, contract price and completed cost.   9. Date and character of alterations.   10. Cost of alterations.   11. Type of construction.   12. Condition of building.   13. The rent per apartment.   14. Whether the property is partly or entirely rented.   15. Name of lessee.   16. How used by lessee.   17. Value of lease, terms of lease, date of expiration.   18. Net income.   19. Whether the property is mortgaged and, if so, the amount of the mortgage and other indicated information.   20. Whether any mortgage on the property had been made or renewed or become due within the past three years and, if so, the circumstances.   21. The amount of fire insurance.   22. Whether the objection to the valuation is based on the valuation of the land or of the building.   23. A complete statement of reasons for the application.   24. Contentions of law raised.

In addition various questions which do not appear to relate to the type of property in question were not answered.

the record that is entitled "Opinion" contains a statement of the board that "We hold that the applications of the appellant [the taxpayer] were a substantial compliance with the statute." Obviously this is in part, at least, a finding of fact. Compare *Commissioner of Corporations & Taxation* v. *Worcester County Trust Co.* 305 Mass. 460, 461–462. So far as it is a finding of fact not vitiated by error of law it is not subject to review by this court. See *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 383.

2. The assessors contend that, by reason of noncompliance with the statute requiring that an application to the assessors for abatement shall be "on a form approved by the commissioner," the appeals to the Appellate Tax Board should have been dismissed on the ground that the board, for this reason, had no jurisdiction of the appeals. For support of this contention the taxpayer relies upon the case of *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489. In that case there was no finding and no evidence that the application was in fact on a form approved by the commissioner and this court held that "the requirement of an application for abatement in the prescribed form is jurisdictional and, since it does not appear that such an application was made by this taxpayer, its appeal to the board of tax appeals [now the Appellate Tax Board] should have been dismissed by the board." In this connection the court said that neither "expressly nor by fair implication is authority conferred on assessors or on the board of tax appeals to abate a tax if no such application was made." Page 498. The court also said that the "lack of an application in the statutory form is not excused by the good faith of the taxpayer, or acceptance by the assessors of an application in some other form nor by the fact that the assessors are not inconvenienced or misled. Such considerations are material on the issue whether an application meets the requirements of the statute, but do not excuse clear noncompliance with these requirements." Page 494.

3. The assessors, though now contending that the applications of the taxpayer did not comply with the statute, previously accepted them and granted abatements thereon.

If their contention now made is correct, they acted without authority in granting these abatements. But, in spite of their present attempt, inferentially, to show that their previous action was illegal, such action is entitled to consideration in determining whether the applications were in compliance with the statute.

4. Prior to the amendment of G. L. (Ter. Ed.) c. 59, § 59, by St. 1933, c. 266, § 1, which first included in this section the requirement that the application should be "in writing . . . on a form approved by the commissioner," an oral application for abatement was sufficient. *Page* v. *Melrose,* 186 Mass. 361. *Shawmut Mills* v. *Assessors of Fall River,* 271 Mass. 358, 359–360. The statute, however, fixed the time within which such application should be made. See G. L. (Ter. Ed.) c. 59, § 59. See also St. 1933, c. 254, § 43, c. 266, § 1; St. 1934, c. 136, § 2; St. 1935, c. 187, § 1; St. 1939, c. 250, § 1. A "seasonable application in some form was essential to jurisdiction of the assessors and of appellate tribunals of a proceeding to abate a tax." *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489, 493. But an oral application seasonably made to the chairman of the board of assessors acting in his official capacity and so received by him was held in the *Shawmut Mills* case to constitute a sufficient application. See pages 360–361.

5. Statutory prerequisites to abatement, at the times here material, other than an application "in writing . . . on a form approved by the commissioner," required by G. L. (Ter. Ed.) c. 59, § 59, as amended, were fixed by G. L. (Ter. Ed.) c. 59, § 61, as amended by St. 1933, c. 165, § 2; by § 64, as amended by St. 1933, c. 130, § 1 (see now St. 1938, c. 478, § 1; St. 1939, c. 31, § 6); and by § 65, as amended by St. 1933, c. 130, § 2, c. 167, § 1 (see now St. 1939, c. 31, § 7). These statutes are summarized in a footnote.[1] The last sentences in §§ 61 and 64 (see § 65 making these provisions applicable to appeals to the Board of Tax

---

[1] General Laws (Ter. Ed.) c. 59, § 61, as amended by St. 1933, c. 165, § 2, provided that a "person shall not have an abatement of a tax imposed upon his personal property subject to taxation, except as otherwise provided, unless he has brought in to the assessors a list of his personal estate as required by section twenty-nine. If such a list of his personal estate is not

Appeals [now the Appellate Tax Board]), relating to abatements of taxes on real estate and requiring inclusion in an application for abatement of such a tax of a "sufficient description of the particular real estate as to which an abatement is requested," originated in St. 1931, c. 150, §§ 2, 3, respectively, whereby new §§ 61, 64, were substituted in G. L. c. 59. See *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 246–247. The change in the language of § 61 so as to include the words "in writing" modifying the word "description" was made by St. 1933, c. 165, § 2. Before the passage of St. 1931, c. 150, said § 61 contained a provision that a "person shall not have an abatement, except as otherwise provided, unless he has brought in to the asses-

filed within the time specified in the notice required by said section twenty-nine, no part of the tax assessed on the personal estate shall be abated unless the applicant shows to the assessors a reasonable excuse for the delay, or unless such tax exceeds by fifty per cent the amount which would have been assessed on such estate, if the list had been seasonably brought in, and in such case only the excess over such fifty per cent shall be abated. A person applying for an abatement of a tax on real estate may have an abatement although no list of the owner's estate was brought in as required by the said notice; provided, that in any application for an abatement of such a tax the applicant shall include a sufficient description in writing of the particular real estate as to which an abatement is requested." Said § 29, as amended by St. 1933, c. 254, § 34, provided that the assessors should give notice requiring persons "to bring in to the assessors, before a date therein specified, in case of residents a true list, containing the items required by the commissioner in the form prescribed by him under section five of chapter fifty-eight of all their polls and personal estate not exempt from taxation [with exceptions not here material] . . . and may or may not require such list to include their real estate subject to taxation in that town." Said § 5 required the commissioner to "prescribe forms" for the list required by § 29 "so arranged that the statement of the person bringing in such a list will include all assessable property held by him." (The requirement that the list should be in the form prescribed by the tax commissioner was first made by St. 1894, c. 294, § 1, though previously "such lists . . . [were] to be in such detail as may be required by the tax commissioner," and he was required to "cause to be printed and distributed to assessors suitable printed forms for such lists." St. 1882, c. 217, §§ 1, 3.) By G. L. (Ter. Ed.) c. 59, § 64, as amended, provision was made for appeal by a person aggrieved by the refusal of assessors to abate a tax, subject to the limitation that if "the list of personal property required to be brought in to the assessors was not brought in within the time specified in the notice required by section twenty-nine, no tax upon personal property shall be abated unless the appellate board finds good cause for this delay or unless the assessors have so found as provided in section sixty-one. A tax or assessment upon real estate may be abated whether or not a list of property was brought in within the time specified by the notice required by section twenty-nine; provided, that the application for an abatement of such a tax or assessment included a sufficient description of the particular real estate as to which an abatement is requested." By § 65, in the form appearing in St. 1933, c. 167, § 1, provision was made for appeal to the Board of Tax Appeals, now the Appellate Tax Board (St. 1937, c. 400), subject to the conditions stated in said § 64, as amended.

sors the list of his estate as required by section twenty-nine"; a provision, substantially as the section set forth herein (see footnote, page 304), with respect to personal property; and a provision with respect to real estate that if "the applicant was not required by said notice to include his real estate in said list, and has not done so, he shall, if he seeks an abatement of the tax on his real estate, file with his application a list of his real estate, with an estimate of the fair cash value of each parcel."

The effect of St. 1931, c. 150, §§ 2, 3 (see also St. 1933, c. 165, § 2), was to relax the severity of the requirement of a list as a prerequisite to abatement of a tax on real estate where the notice to bring in lists provided for by § 29 required inclusion of real estate in such lists; to substitute, where an applicant for an abatement of a tax on real estate was not required by the notice under said § 29 to include his real estate in his list and had not done so, for the requirement that he "file with his application a list of his real estate, with an estimate of the fair cash value of each parcel," (see *Boston & Albany Railroad* v. *Boston*, 275 Mass. 133, 137–138), a requirement that he include in his application a "sufficient description of the particular real estate as to which an abatement is requested"; and to require the inclusion of such a "sufficient description" in all applications for abatement of taxes on real estate, whether or not the applicant had been required by the notice under § 29 to include his real estate in the list. See *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 250.

6. It is obvious that the provision of G. L. (Ter. Ed.) c. 59, § 59, as amended, requiring an application for abatement to be "in writing . . . on a form approved by the commissioner" is to be read with the provisions of §§ 61, 64, as amended, requiring inclusion in an application of a "sufficient description . . . of the particular real estate." This is true notwithstanding the fact that St. 1933, c. 266, § 1, which first inserted in said § 59 the provision that the application be "in writing . . . on a form approved by the commissioner," was passed after the passage of the statutes requiring the inclusion in an application of such a "suffi-

cient description." There was no express repeal of these earlier statutes. And they were not repealed by implication. "A statute is to be interpreted with reference to the preëxisting law. . . . If reasonably practicable, it is to be explained in conjunction with other statutes to the end that there may be an harmonious and consistent body of law. . . . Statutes 'alleged to be inconsistent with each other, in whole or in part, must be so construed as to give reasonable effect to both, unless there be some positive repugnancy between them.' *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8, 17." *Walsh* v. *Commissioners of Civil Service,* 300 Mass. 244, 246. *Eastern Racing Association, Inc.* v. *Assessors of Revere,* 300 Mass. 578, 581. See also *Commonwealth* v. *Bloomberg,* 302 Mass. 349, 352. There is no "positive repugnancy" between the statutory provisions here in question, and "reasonable effect" can be given to all. The significant language in G. L. (Ter. Ed.) c. 59, § 59, as amended, considered in connection with other statutory provisions is, therefore, to be read as if it provided that an application for abatement shall be "in writing . . . on a form approved by the commissioner and shall include therein a sufficient description . . . of the particular real estate as to which an abatement is requested."

7. The applications in the present case were "in writing." G. L. (Ter. Ed.) c. 4, § 7, Thirty-eighth. And each of them was "on" a "form approved by the commissioner" in the narrow sense that the writing was on such a form. Even this minimum requirement was not met by the application in question in *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489. Moreover, such information as was given by the application was arranged therein in accordance with the form. The only ground, therefore, upon which it could, in any event, be said that the applications did not comply with the requirement for the use of an approved form is that the taxpayer failed to furnish information requested thereby. The sole question for decision, therefore, is whether there was such a failure to furnish information as to vitiate, as matter of law, applications that the Appellate Tax Board found "were a substantial compliance with the statute."

8. The commissioner could not under the guise of approving a form for an application impose upon the taxpayer an obligation to furnish information not required by the statute expressly or by implication. *Assessors of Quincy* v. *Boston Consolidated Gas Co.* 309 Mass. 60, 71.

9. In determining what information is expressly or impliedly required by statute to be included in an application, regard must be had to the nature of an application. A proceeding for abatement is purely a statutory proceeding. *Hamilton Manuf. Co.* v. *Lowell*, 274 Mass. 477, 483. The provision for an application is procedural. An application is a constituent part of the statutory remedy. See *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 247–249. It is the method by which the statutory proceeding is begun. The proceeding must be begun by a proper application within the period fixed by the statute, which is somewhat like a short statute of limitations, though "the time within which the application is to be made is not a mere matter of limitation but is an integral part of the right, and the failure to apply within the prescribed time destroys the right." *Old Colony Railroad* v. *Assessors of Quincy*, 305 Mass. 509, 511–512. In *Shawmut Mills* v. *Assessors of Fall River*, 271 Mass. 358, 361, the application was treated as comparable to a "notice," the purpose of which was "to give information to an official board representing a town, in reference to a possible pecuniary liability." Though that case was decided at a time when an oral application was sufficient — when the "usual course of proceedings upon applications to assessors for abatement . . . [was] entirely informal" (*Page* v. *Melrose*, 186 Mass. 361, 363–364), the general purpose of an application has not changed by reason of the more formal requirements of St. 1933, c. 266, § 1. While in this aspect an application is a notice, it is referred to in the statutes as a request. In G. L. (Ter. Ed.) c. 59, §§ 61, 64 (see St. 1931, c. 150, §§ 2, 3; St. 1933, c. 165, § 2) the "sufficient description" that is to be included in the application is of the real estate with respect to which "an abatement is requested."

Such a notice or request is in the nature of a claim for

reduction of the tax to which it relates, upon which the assessors are required by law "to act within a reasonable time . . . to determine whether an abatement should be granted or refused." *Taber Mill* v. *Assessors of New Bedford*, 261 Mass. 432, 434. The provision of G. L. (Ter. Ed.) c. 58A, § 6, in the form enacted by St. 1933, c. 167, § 4, whereby, if a board of assessors fails to act upon an application prior to the expiration of four months from the date of filing such application, "it shall then be deemed to be denied," and the taxpayer has the right to take an appeal from such denial "in the same manner as though the . . . board of assessors had in fact refused to grant the abatement applied for" (compare now G. L. [Ter. Ed.] c. 59, § 64, as amended) was not "intended to relieve the . . . boards of assessors from the duties imposed upon them by G. L. (Ter. Ed.) c. 59, as amended, in the matter of entertaining, hearing and deciding applications for abatement of taxes filed with them in due course . . . . It was the intention of the Legislature . . . not to excuse the . . . boards of assessors from the performance of duties, but rather to provide an adequate remedy at law in the event that . . . [they] did fail to perform them within a fixed time." *Eastern Racing Association, Inc.* v. *Assessors of Revere*, 300 Mass. 578, 581–582. By reason of the existence of this adequate remedy at law, however, mandamus no longer lies, as previously, to compel the performance of these duties. Compare *Taber Mill* v. *Assessors of New Bedford*, 261 Mass. 432, with *Eastern Racing Association, Inc.* v. *Assessors of Revere*, 300 Mass. 578. The statement quoted from the *Eastern Racing Association* case with respect to a "hearing" by the assessors upon an application for abatement is in conformity with the statement in *Harrington* v. *Glidden*, 179 Mass. 486, 495, S. C. sub nomine *Glidden* v. *Harrington*, 189 U. S. 255, that the "defendant's brief contains an elaborate argument in support of the proposition that our statutes relating to the assessment of taxes are unconstitutional because they do not give the party assessed an opportunity to be heard. But he does have full opportunity to be heard before the assessing board, if he desires

it, before the demand becomes conclusively established against him." See also *Corcoran* v. *Aldermen of Cambridge,* 199 Mass. 5, 11–12; *Chelsea* v. *Treasurer & Receiver General,* 237 Mass. 422, 432–433. And in *Old Colony Railroad* v. *Assessors of Boston,* 309 Mass. 439, 442, it was said that "there is nothing contained in the statutes that in any way intimates that the assessors are under no obligation to grant a hearing." Without suggesting that the statutory proceeding for abatement would be unconstitutional even if it provided no opportunity for the applicant to be heard before the assessors, in view of the provisions for such hearings before appellate boards (see *Napier* v. *Springfield,* 304 Mass. 174, 177), we think that the statutes regulating proceedings for abatement of taxes are to be construed as contemplating hearings before the assessors upon applications for abatement.

An application for abatement is directed to the official board that made the original assessment. It seeks revision by that board of its original action which was taken without the person assessed having an opportunity for a hearing, except as he had such an opportunity if the assessors were unwilling to accept his list as true and requested him "to answer on oath all necessary inquiries as to the nature and amount of his property." G. L. (Ter. Ed.) c. 59, § 35. See *Moors* v. *Street Commissioners of Boston,* 134 Mass. 431, 432. In no event — unless by statutes not here material — is a person assessed required by statute to furnish information or evidence as to the value of his property as a preliminary to the original assessment. See *Assessors of Quincy* v. *Boston Consolidated Gas Co.* 309 Mass. 60, 70–72, and cases cited. "It is the duty of the assessors within reasonable limits to seek light from every available source bearing on the 'fair cash value' of all property to be assessed by them for purposes of taxation." *Tremont & Suffolk Mills* v. *Lowell,* 271 Mass. 1, 18. Compare, when no list has been brought in, G. L. (Ter. Ed.) c. 59, § 36; *Harrington* v. *Glidden,* 179 Mass. 486, 493–494. See also *Newburyport* v. *County Commissioners,* 12 Met. 211, 219–221. And when a person assessed sought a revision of an assess-

ment so made prior to the passage of St. 1931, c. 150, if he had included his real estate in his list he was not required to make any statement or furnish any evidence as to its value with his application, but if he had not been required to include his real estate in his list and had not done so he was required merely to file a "list" (which is to be distinguished from the "list" required by G. L. c. 59, § 29) of the real estate upon which he sought abatement "with an estimate of the fair cash value of each parcel." G. L. c. 59, § 61. *Boston & Albany Railroad* v. *Boston,* 275 Mass. 133, 137–138. This statute did not require information or evidence as to the value of such real estate, other than the applicant's estimate of such value. And even the requirement of such an estimate was abolished by St. 1931, c. 150, § 2, which substituted for the requirement of such a "list" a requirement that there be included in an application "a sufficient description of the particular real estate as to which an abatement is requested" (see also G. L. c. 59, § 64, as appearing in St. 1931, c. 150, § 3), and imposed this requirement irrespective of whether a list had been brought in under G. L. c. 59, § 29. See *Wynn* v. *Assessors of Boston,* 281 Mass. 245. Doubtless this provision was somewhat illogical in view of the fact that the statute did not then in terms require an application in writing. Whether or not such a requirement was to be implied from this change in the statute (compare *Page* v. *Melrose,* 186 Mass. 361, 363–364) the situation in this respect was made somewhat clearer by St. 1933, c. 165, § 2, which required the "sufficient description" to be "in writing," though the words "in writing" were not inserted in the corresponding section relating to appeals. See G. L. (Ter. Ed.) c. 59, § 64. Obviously no information or evidence as to value was required to be included in an application by reason of any of these statutory changes. And the later requirement, now under consideration, effected by the substitution of a new § 59 in c. 59 of the General Laws by St. 1933, c. 266, § 1, whereby an application must be "in writing . . . on a form approved by the commissioner" did not in terms require the inclusion in the application of information or evidence as to value.

There is nothing in the change effected by St. 1933, c. 266, § 1, indicating any intention on the part of the Legislature to change the nature of an application for an abatement beyond making it more formal. It remains a "notice" by which "information" is given to the assessors "in reference to a possible pecuniary liability" (see *Shawmut Mills* v. *Assessors of Fall River*, 271 Mass. 358, 361), a "request" or "claim" for reduction of the tax assessed by them and, as incidental thereto, for an opportunity to be heard by them as to the propriety of the original assessment and, if denied, a foundation for later proceedings before an appellate board. An application, however, is not in its nature the presentation of evidence in support of such claim. Such evidence would ordinarily be evidence of value, though the statutory proceeding for abatement is not limited to overvaluation. See *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 497–498. The elimination by St. 1931, c. 150, § 2, from G. L. c. 59, § 61, of the requirement that a "list" of the real estate — meaning that with respect to which an abatement is sought — "with an estimate of the fair cash value of each parcel," and the substitution therefor of a "sufficient description" of such real estate supports the conclusion that no information or evidence as to its value need be included in or accompany the application. And this provision, continued in force, as applied to a case like the present case, by St. 1933, c. 165, § 2, with the express requirement that such description be "in writing" was not modified by St. 1933, c. 266, § 1 — the statute now particularly in question — except as the latter statute requires in terms that the application itself not only be "in writing" but also "on a form approved by the commissioner." These statutes are to be read together, as already indicated, and with related statutory provisions as providing a single consistent statutory procedure relating to abatements. Moreover, the provision of G. L. (Ter. Ed.) c. 59, § 61A, enacted by St. 1935, c. 276, § 2, that a person applying for abatement shall, upon request by the assessors "furnish them with accurate and complete information as to the rents received from, and the expenses of

maintaining" the property taxed, furnishes some indication that such information is not to be included in the application. , This statute by its terms assumes the existence of a proper application and enables the assessors to secure information in aid of their consideration of such application.

Considering the statutes relating to abatements as a whole, in the light of their history, we are of the opinion, expressed in general terms, that the information to be included in an application for abatement of a tax on real estate, at the risk that if not so included the application cannot be considered, is such information as will adequately inform the assessors that a claim for abatement of a tax upon real estate therein referred to is being made by a person entitled to apply for such abatement, with a "sufficient description of the particular real estate as to which an abatement is requested." So far as the statutory proceeding is analogous to an action at common law (see *Sears v. Nahant*, 215 Mass. 234, 240) the application is in the nature of pleading rather than of presentation of evidence. Clearly this was the nature of an application before the passage of St. 1933, c. 266, § 1, and if the Legislature had intended by that statute to transform the nature of an application so completely as to make it a presentation of evidence it would hardly have left such an intention to mere inference from a provision requiring an application to be "on a form approved by the commissioner." This is particularly true when such an inference would subject taxpayers to additional risks of losing their rights to prosecute applications for abatement beyond those to which they are subjected by express or necessarily implied statutory requirements. Compare *Assessors of Boston* v. *Suffolk Law School*, 295 Mass. 489. See also *Central National Bank* v. *Lynn*, 259 Mass. 1, 3–5. Tax laws "should be construed and interpreted as far as possible so as to be susceptible of easy comprehension and not likely to become pitfalls for the unwary." *Hemenway* v. *Milton*, 217 Mass. 230, 233.

Of course we do not purport in this opinion to describe in detail the information that an applicant for abatement may be required to include in his application at the risk

that the omission thereof will vitiate the application, except as we deal with omissions from the applications in this case.    Nor do we make any intimation as to the effect of failure to arrange essential information in the manner required by the form approved by the commissioner.    No such question is presented in this case.

10. We now consider, in the light of the interpretation of the statutes above made, whether the applications for abatement in the present case were insufficient, as matter of law, by reason of the failure of the applicant to answer certain questions upon the form approved by the commissioner.    The Appellate Tax Board found as a fact, so far as it is a matter of fact, that the applications "were a substantial compliance with the statute."    We interpret this to mean that in all material particulars the statutory requirement that an application be "on a form approved by the commissioner" was complied with.    We think that this finding was not vitiated by error of law.

The questions on the form that were not answered may be grouped in four classes, though some of them might conceivably fall in more than one of these classes.

a. The matter of a "sufficient description" of the "particular real estate" to which the several applications relate is of major importance.    Each application, in answer to specific questions, described the real estate therein referred to as a three-story apartment house containing six apartments located at a given number on a designated street. The purpose of a "sufficient description" in an application for an abatement, as appears from the history of the legislation relating to abatements, is the same with respect to an abatement as that of the list referred to in G. L. (Ter. Ed.) c. 59, § 29, with respect to an original assessment. And such a list was defined in *West Boylston Manuf. Co.* v. *Assessors of Easthampton*, 277 Mass. 180, 186, as "an enumeration, description and other particularization of the property in sufficient detail to convey to the assessors, presumed in general to be familiar with the outstanding features of their respective municipalities, a reasonable understanding of the extent and nature of the subject to which it

relates." The requirement of a "sufficient description" in an application is not more comprehensive. (The words "sufficient description" may well have been thought more apt than the word "list" when applied to "particular real estate" and no enumeration of all the real estate of the taxpayer was contemplated. See *Boston & Albany Railroad* v. *Boston,* 275 Mass. 133, 136–137.) The answers to the questions in each of the applications could have been found to constitute a "sufficient description" of the particular real estate to which the application related, in accordance with this applicable definition. *West Boylston Manuf. Co.* v. *Assessors of Easthampton,* 277 Mass. 180, 185. The case in this respect is readily distinguishable from *Boston Rubber Shoe Co.* v. *Malden,* 216 Mass. 508, 509, and *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439, 440. The fact that the assessors granted partial abatements is some indication that the description was sufficient, in the language of the *West Boylston Manuf. Co.* case, to "convey to the assessors . . . a reasonable understanding of the extent and nature" of the property to which the application related. See *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489, 494. Since the description could have been found to be sufficient upon the answers made by the applicant, its failure to answer other questions bearing upon the description did not as matter of law vitiate the application. The form approved by the commissioner is, of course, the means by which the required information must be given to the assessors. It was said in *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439, 450, of blanks included in a form of list prescribed by the commissioner under what is now G. L. (Ter. Ed.) c. 58, § 5 (see c. 59, § 29 as amended), that either of the blanks "could have been changed easily so as to conform precisely in its description to the property required to be listed." Doubtless this is equally true of the form approved by the commissioner under St. 1933, c. 266, § 1. And when the answers upon an approved form relating to the description of the particular real estate with respect to which an abatement is sought constitute a "sufficient description" of such real estate, failure to answer

other questions relating to the description thereof is to no greater degree a failure to conform to the statutory requirement with respect to the use of an approved form. In *Boston Rubber Shoe Co.* v. *Malden,* 216 Mass. 508, 510–511, reference was made to forms of lists prescribed by the commissioner, but the list there in question was held insufficient, not because of failure to use a prescribed form, but for failure to include in the list information essential to a statutory list.

b. Many questions in each application that were not answered relate to a description of the real estate in a broad sense, but they bear particularly on its value. So far as they relate to a description as such, the failure to answer them did not vitiate the application, since, without answers to them, it could be found that such application contained a "sufficient description" of the particular real estate. And so far as the questions bear upon the value of the real estate, the applicant, for reasons already stated, was not required to include in its application information or evidence as to such value. It is to be observed, however, that in each application is included an answer to the question "Total rentals if fully rented."

c. The approved form recognizes several distinct classes of buildings such as "Dwelling," "Apartment," "Business," "Manufacturing," "Garage," and contains questions relating specifically to each class. The answer in these applications to the question "Class of building" is "Apartment House." Obviously the form does not require answers to questions relating to other classes of buildings.

d. Each application contains questions as to the assessed value of the land, the assessed value of the buildings, and the total assessed valuation. Only the last of these was answered. And the question: "Is the objection based on the valuation of the land or of the building?" was not answered. The tax on a parcel of land and the building thereon is one tax. *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319, 327–328. The land and the building "cannot be separated for the purpose of collecting taxes," although for statistical purposes they may be valued

separately. *Hamilton Manuf. Co.* v. *Lowell,* 185 Mass. 114, 117. *Cotton* v. *Lexington,* 261 Mass. 169, 174. *Paine* v. *Assessors of Weston,* 297 Mass. 173, 177–178. Nor can they be separated for the purpose of abatement except as the "component parts . . . are each open to inquiry and revision . . . in reaching the conclusion whether . . . [the] single assessment is excessive." *Massachusetts General Hospital* v. *Belmont,* 238 Mass. 396, 403. We think that answers to these questions were not as matter of law essential to a statement of the applicant's claim for abatement of the one tax assessed upon the land and the building thereon, however important they might be in a consideration of the evidence upon a hearing. And, without intimating to what extent, if at all, an applicant may be required to state upon an application the reasons therefor and the contentions of law raised thereby in answer to questions to that effect upon the form, we think that the statements in these applications of the total assessed valuation of the real estate and of the applicant's estimate of its fair cash value at a lesser amount, indicating a claim of over-valuation, could have been found to constitute compliance in all material particulars with the requirements of the form in this respect.

11. It follows that there was no error in the decision of the Appellate Tax Board in denying the assessors' motion to dismiss. Since no other question of law is presented by the appeal, the decision of the Appellate Tax Board granting an abatement in the amount of $746.40 must stand.

> *Abatement granted to the taxpayer in the amount of $746.40 with interest thereon from the date of payment thereof with costs.*