Board of Assessors of Provincetown *v.* Vara Sorrentino Realty Trust.

BOARD OF ASSESSORS OF PROVINCETOWN *vs.* VARA-
SORRENTINO REALTY TRUST.

Suffolk.  January 6, 1976. — February 3, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Appellate Tax Board: record.

Dismissal of an appeal to the Appellate Tax Board by an owner of
certain real estate in a town was not required on the grounds that
the owner failed to supply the assessors of the town with informa-
tion requested pursuant to G. L. c. 59, § 61A, and that the owner
did not answer interrogatories propounded by the assessors, where
the record showed that some information had been supplied to the
assessors and that the assessors had not taken advantage of dis-
covery devices available to them under §§ 38B and 38C of c. 59.
[693-695]

APPEAL from a decision of the Appellate Tax Board.

*Edward E. Veara,* Town Counsel, for the Board of
Assessors of Provincetown.

*Arnold Bloom* for Vara-Sorrentino Realty Trust.

KAPLAN, J.  Vara-Sorrentino Realty Trust, owner of a
"hotel-restaurant-bar-shop complex" in Provincetown,
Massachusetts, applied for abatements of the real estate
taxes assessed against the property by the town's assessors
for the years 1970 through 1973.  As the assessors did not
approve any of these applications, the owner lodged
appeals under the formal procedure with the Appellate
Tax Board.  The Board heard the appeals together in
October, 1974, received the evidence offered on behalf of
the owner and the assessors, and decided for the owner.
It held that the assessed valuations, which had ranged
from $250,700 for 1970 to $264,300 for 1973, exceeded
fair market value by amounts from $35,700 for 1970 to

$49,300 for 1973, and abatements were allowed accordingly, reducing the aggregate of taxes assessed for the four years, $30,782.40, by an amount of $5,154.40.

In reaching this result, which it supported by findings of fact and a report pursuant to G. L. c. 58A, § 13, the Appellate Tax Board relied on a "capitalization of income" approach. This had been stressed by the owner's expert; the Board, however, did not accept this expert's testimony uncritically: it found his evidence inadequate in some respects and finally adopted values considerably higher than those he had proposed. With regard to a "reproduction less depreciation" method used by a witness for the assessors, the Board expressed doubt that the hotel, 144 years old, could be effectively rebuilt; and it thought a "comparable sales" formula would be unsatisfactory because of the absence of truly comparable sales.

The assessors appeal to this court under G. L. c. 58A, § 13. They do not contend that the decision of the Appellate Tax Board is erroneous in substance; they would be in an awkward position to attempt to do so since the evidence was not reported. See *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745, 750 (1975). Rather the assessors seek reversal on the ground that they were unfairly handicapped in meeting the capitalization of income theory because of the owner's failure (as they claim) to supply them with facts and figures as to receipts, expenses, and other matters. But the assessors are hard put to make this argument because the record is sketchy in this respect also. It appears that the assessors made requests for information under G. L. c. 59, § 61A,[1] and applied to the

---

[1] Section 61A, as amended by St. 1968, c. 292, provides: "The person applying for an abatement of a tax on real estate or personal property shall, upon request, exhibit to the assessors the property to which the application for abatement relates and if required by them point out and identify such property and furnish them with accurate and complete information as to the rents received from, and the

Appellate Tax Board to dismiss the appeals for alleged failure of the owner to comply. But the Board's omission to take such action is not shown to have been improper: the record indicates, indeed, that the owner did supply some information to the assessors,[2] although what that information consisted of is not made clear. Again, the assessors served interrogatories on the owner (see Rule 25 of the Rules of Practice and Procedure of the Appellate Tax Board) which they say the owner did not answer, but the Board's denial of a motion by the assessors to enter a "decree pro confesso" may be explained, for aught that the record shows, by the assessors' having received enough information in other ways during the long period before the appeals were heard; for failure of the interrogated party to give answers, the Board is to enter such order "as justice requires," not necessarily an order of dismissal.[3]

In the matter of "discovery" much must be left to the judgment and discretion of the Appellate Tax Board. The Board pointed out in its findings and opinion that if the assessors had need to elicit more data to meet the "capitalization of earnings" theory, they could have availed themselves of the devices of G. L. c. 59, §§ 38B[4] and

---

expenses of maintaining, such property. Failure of the applicant to comply with the provisions of this section within thirty days after such request shall bar him from any statutory appeal under this chapter unless the applicant was unable to comply with such request for reasons beyond his control or unless he attempted to comply in good faith."

[2] Indeed the record indicates that the parties were in the process of settling their dispute, which betokens some furnishing of data.

[3] Rule 25 refers to G. L. c. 231, §§ 61-67; see § 64 regarding penalties for failure to answer.

[4] Section 38B, inserted by St. 1970, c. 118, provides: "A board of assessors may request the owner or lessee of any real estate to make a written return under oath within sixty days containing such information as may reasonably be required by it to determine the actual value of such property.

"Failure of an owner or lessee of real estate to comply with such request within sixty days after it has been made shall bar him from

38C[5] besides § 61A. At the actual hearing of the appeals the assessors presumably had all the usual methods open to them to force production of data and to analyze them; if justifiable claim could be made that time was needed for analysis, continuances could be given within reason. What we have said is not intended to derogate in any way from the importance of pre-trial access. Rather we would underline and emphasize the value of these procedures as means of reaching the facts. In the present case, however, the assessors have simply failed to establish material error on the record.[6]

*Decision affirmed.*

---

any statutory appeal under this chapter, unless the owner or lessee of such real estate was unable to comply with such request for reasons beyond his control. If any owner or lessee of real estate in a return made under this section makes any statement which he knows to be false in a material particular, such false statement shall bar him from any statutory appeal under this chapter."

[5] Section 38C, inserted by St. 1970, c. 118, provides: "A board of assessors may require testimony under oath of a taxpayer relative to his written return filed under section thirty-eight B and may also require testimony under oath of any applicant for abatement under section fifty-nine."

[6] A motion by the owner to strike parts of the record appendix and of the assessors' brief is denied. No attention has been paid to material reprinted in the owner's brief which the owner did not cross-designate to form part of the record appendix.